# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| In re: | ) Case No. 1:04-cv-00215-WDQ |
| **WILLIAM RAY MILLER**<br>a/k/a RAY MILLER, | ) **BRIEF OF APPELLEES**<br>) **CIGNA INSURANCE**<br>) **COMPANY, *ET AL.*** |
| Debtor. | ) |
| **WILLIAM RAY MILLER,** | ) |
| **Appellant,** | ) **Chapter 7**<br>) **Bankruptcy Case No.**<br>) **00-6-1758-JS** |
| v. | ) |
| **CIGNA INSURANCE COMPANY, *et al.*,** | ) **Adv. Pro. No. 01-5344-JS** |
| **Appellees.** | ) |

FILED _____ ENTERED
LODGED _____ RECEIVED

MAR 5 2004

BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
NIGHT DROP BOX

**CIGNA INSURANCE COMPANY,** *et al.*

Stephen F. Fruin, MD Fed. Bar No. 08456
Carol L. Hoshall, MD Fed. Bar No. 05417
Whiteford, Taylor & Preston LLP
Seven Saint Paul Street, Suite 1400
Baltimore, Maryland 21202
(410) 347-8700

## TABLE OF CONTENTS

JURISDICTIONAL STATEMENT .................................................................................1

STATEMENT OF ISSUE.............................................................................................1

STANDARD OF REVIEW ..........................................................................................2

STATEMENT OF THE CASE ......................................................................................2

ARGUMENT ..........................................................................................................8

I.      The Bankruptcy Court properly ruled that the findings of fact in the Maryland state court
        proceedings preclude Miller from relitigating factual issues that are material to
        determining dischargeability of Miller's debt to CIGNA................................................8

II.     Miller's debt should be excepted from discharge under 11 U.S.C. § 523(a)(2)(A) because
        Miller obtained the use of CIGNA's premiums by false pretenses, false
        misrepresentation, and actual fraud. .........................................................................10

III.    Miller's debt should be excepted from discharge under 11 U.S.C. § 523(a)(4) because the
        debt arose as a result of Miller's defalcation while serving as CIGNA's express fiduciary .........14

IV.     Miller's debt should be excepted from discharge under 11 U.S.C. § 523(a)(6) because
        Miller's conduct was a willful and malicious injury to CIGNA and its property.........................17

V.      CIGNA should not be judicially estopped from proving that Miller's conduct was
        intentional because such an application goes contrary to the rationale of judicial estoppel
        – to maintain the integrity of judicial system...............................................................19

CONCLUSION.........................................................................................................23

# TABLE OF AUTHORITIES

**PAGE NO.**

## CASES

*Bennett v. W.T. Grant Co.,* 481 F.2d 664 (4th Cir. 1973)................................................. 18

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986) ........................................................ 2

*First Nat. Bank of Maryland v. Standley (In re Standley),* 66 F.3d 664 (4th Cir. 1995) ............... 18

*Grogan v. Garner,* 498 U.S. 279 (1991)................................................................... 8

*Hager v. Gibson,* 109 F.3d 201, 207 (4th Cir.1997)..................................................... 2

*Hemelt v. Pontier (In re Pontier),* 165 B.R. 797 (Bankr. D. Md. 1994) ..................................... 17

*In re Ballard,* 65 F.3d 367 (4th Cir. 1995)........................................................... 2

*In re Bryant,* 147 B.R. 507 (Bankr. W.D. Mo. 1992) ..................................................... 14

*In re Chomat,* 216 B.R. 681 (Bankr. S.D. Fla. 1997) ..................................................... 22

*In re Clark,* 927 F.2d 793 (4th Cir. 1991) ........................................................... 2

*In re Dade,* 296 B.R. 388 (Bankr. E.D. Va. 2001) ..................................................... 18

*In re Lee,* 90 B.R. 202 (Bankr. E.D. Va. 1988) ........................................................ 18

*In re Marino,* 139 B.R. 380 (Bankr. D. Md. 1992) ..................................................... 13

*In re Norcia,* 255 B.R. 394 (Bankr. D. Md. 2000)..................................................... 2

*In re Shipe,* 41 B.R. 584 (Bankr. D. Md. 1984)....................................................... 11

*In re Showalter,* 86 B.R. 877 (Bankr. W.D. Va. 1988).................................................. 11

*Insurance Company of North America v. Utica Mutual Insurance Company* (unreported)........ 21

*Johnson v. Davis (In re Davis),* 262 B.R. 663 (Bankr. E.D. Va. 2001)....................................... 18

*Kawaauhau v. Geiger,* 523 U.S. 57 (1998).............................................................. 17, 18

*Kramer v. Globe Brewing Co.,* 175 Md. 461 (1938) ................................................... 19, 20

*Lees Federal Savings & Loan Ass'n v. Metcalf*, 332 Md. 107 (1993)............................................ 9

*Oneida Motor Fright, Inc. v. United Jersey Bank*, 848 F.2d 414 (3d Cir. 1988) ........................ 19

*Prarde v. Bell*, 105 Md. App. 636 (1995) ................................................................................. 8

*Rosen v. Bezner*, 996 F.2d 1527 (3d Cir. 1993) ......................................................................... 2

*Spinoso v. Heilman (In re Heilman)* ............................................................................... 11, 15

*St. Paul Fire & Marine Ins. Co. v. Vaughn*, 779 F.2d 1003 (4th Cir. 1985) ................................ 18

*Stone v. Stone*, 230 Md. 248 (1962).......................................................................................... 20

*Winmark Limited Partnership v. Miles & Stockbridge*, 345 Md. 614 (1997) .............................. 19

## STATUTES

11 U.S.C. § 523(a)(2)(A)............................................................................ 1, 3, 4, 10, 11, 13

11 U.S.C. § 523(a)(4)............................................................................1, 3, 4, 14, 15, 17, 22

11 U.S.C. § 523(a)(6)............................................................................ .1, 3, 4, 17, 18

iv

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| In re: | ) Case No. 1:04-cv-00215-WDQ |
| WILLIAM RAY MILLER<br>a/k/a RAY MILLER, | ) BRIEF OF APPELLEES<br>) CIGNA INSURANCE |
| Debtor. | ) COMPANY, *ET AL.* |
| WILLIAM RAY MILLER, | ) |
| Appellant, | ) Chapter 7<br>) Bankruptcy Case No. |
| v. | ) 00-6-1758-JS |
| CIGNA INSURANCE COMPANY, *et al.,* | ) Adv. Pro. No. 01-5344-JS |
| Appellees. | ) |

### JURISDICTIONAL STATEMENT

Appellees CIGNA Insurance Company, Insurance Company of North America, Century Indemnity Company, CIGNA Fire Underwriters Insurance Company, CIGNA Property and Casualty Insurance Company, Indemnity Insurance Company of North America, Pacific Employers Insurance Company, and Bankers Standard Insurance Company (collectively, "CIGNA") concur with the jurisdictional statement set forth in the Brief of Appellant William Ray Miller (the "Debtor" or "Miller").

### STATEMENT OF ISSUE

The issue presented by this appeal is as follows:

Did the Bankruptcy Court properly find that there was no genuine issue as to any material fact and that CIGNA was entitled to judgment as a matter of law that its state court judgment against Miller for a debt incurred as part of a "modified insurance Ponzi scheme" was nondischargeable under Sections 523(a)(2)(A), (a)(4), and (a)(6) of the United States Bankruptcy Code?

1

## STANDARD OF REVIEW

The District Court reviews *de novo* a bankruptcy court's grant of summary judgment. *Hager v. Gibson,* 109 F.3d 201, 207 (4th Cir.1997) (citing *In re Ballard,* 65 F.3d 367, 370 (4th Cir.1995)); *In re Norcia*, 255 B.R. 394, 396 (Bankr. D. Md. 2000); *see also Rosen v. Bezner,* 996 F.2d 1527, 1530 n. 2 (3d Cir. 1993) ("because summary judgment may only be granted where there is no genuine issue of material fact, any purported 'factual findings' of the bankruptcy court cannot be 'factual findings' as to disputed issues of fact, but rather are conclusions as a matter of law that no genuine issue of material fact exists."). The party moving for summary judgment bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). If the movant satisfies this burden, the burden shifts to the nonmovant to show, by either referring to evidentiary material in the record or by submitting additional evidentiary documents, that genuine issues of material fact remain to be resolved. *Id.* Moreover, a grant of summary judgment may be affirmed if there is any ground in the record to support the lower court's decision, even if that court did not rely on it. *Hager v. Gibson,* 109 F. 3d 201 (4th Cir. 1997); *In re Clark*, 927 F.2d 793, 797 (4th Cir. 1991).

## STATEMENT OF THE CASE

### Procedural History

Miller appeals from the December 31, 2003 Order (the "Order") of Judge James F. Schneider, of the United States Bankruptcy Court for the District of Maryland (the "Bankruptcy Court"), granting CIGNA's Motion for Summary Judgment with respect to its Complaint seeking to have Miller's debt to CIGNA determined to be nondischargeable under the provisions

2

of Sections 523(a)(2)(A), (a)(4), and (a)(6) of the U.S. Bankruptcy Code (Rec. 10, Doc. 25 ).[1]

This appeal, in part, turns on whether the Bankruptcy Court properly applied the doctrine of

collateral estoppel to rely upon the factual findings and conclusions of law in the Maryland state

court proceedings that led to the judgment at issue.   Consequently, the litigation activities and

events in the state court proceedings are discussed at length herein.   The factual background of

that litigation is set forth in Rec. 14, which is a copy of the opinion of the Court of Appeals of

Maryland in *Insurance Co. of North America v. Miller*,  362 Md. 361, 765 A.2d 587 (2001).[2]

On July 24, 1997, CIGNA sued Miller and his employer, J.L. Hickman, Inc. (the

"Agency"), in the Circuit Court for Baltimore County for breach of fiduciary duty, conversion

and negligence (Rec. 14).   The Circuit Court rendered a verdict in favor of Miller, which CIGNA

appealed to the Maryland Court of Special Appeals (Rec. 14).   Prior to argument before the

intermediate court, the Maryland Court of Appeals granted review on its own initiative and

reversed the Circuit Court's ruling (Rec. 14).   The Court of Appeals held that as the agent of

CIGNA, Miller knowingly and intentionally breached his fiduciary duty to CIGNA and,

additionally, at a minimum, his action in this "modified insurance Ponzi scheme" could

constitute negligence (Rec. 14).

On May 21, 2001, pursuant to the ruling of the Court of Appeals, the Circuit Court

entered a judgment (the "Judgment") for breach of fiduciary duty and negligence against Miller

in the amount of $597,850, plus prejudgment and postjudgment interest for a total debt of

$784,595.20 (the "Judgment Debt") (Rec. 3, Doc. 10).

---

[1] The record references ("Rec.") herein refer to record on appeal pursuant to Appellant's designation and Appellees'
supplemental designation,  followed by the designation number and, where applicable, the docket number ("Doc." in
the Bankruptcy Court.  References to "Tr. ___" refer to the transcript of hearing on the summary judgment motion.
[2] For the convenience of the Court, as many factual references as possible will be taken from the opinion of the
Court of Appeals of Maryland, *Insurance Company of North America v. Miller*, 362 Md. 361, 765 A. 2d 587
(2001).  For consistency with Miller's brief, page references will be to the Maryland Reports citation.

On September 20, 2000, Miller filed a voluntary Chapter 7 bankruptcy petition in the Bankruptcy Court for the District of Maryland (Rec. 3, Doc. 10). On July 16, 2001, CIGNA filed an adversary complaint seeking to except the Judgment Debt from Miller's discharge in bankruptcy (Rec. 1, Doc. 1). CIGNA filed a Motion for Summary Judgment on February 15, 2002 (Rec. 3, Doc. 10). Miller filed an opposition to that motion on March 18, 2002 (Rec. 5, Doc. 12) and a supplemental memorandum of points and authorities on May 15, 2002 (Rec. 5, Doc. 12).

The Bankruptcy Court heard oral arguments on May 20, 2002 (Rec. 13, Doc. 32), and on December 31, 2003, for the reasons stated in its Memorandum Opinion (Rec. 9, Doc. 20) filed simultaneously, issued an order granting CIGNA's motion for summary judgment and finding Miller's debt to CIGNA to be non-dischargeable pursuant to Sections 523(a)(2)(A), (a)(4), and (a)(6) of the U.S. Bankruptcy Code (Rec. 12, Doc. 21). Miller filed an appeal to the District Court of Maryland on January 9, 2004 (Rec. 10, doc. 25).

## Factual Background

The Agency's conduct, with Miller's direct, intentional participation, was a classic example of playing both ends against the middle, a set-up described by the Maryland Court of Appeals as a "modified insurance Ponzi scheme." (Rec. 14, 362 Md. 361, 368 n.9.) Miller actively participated in a scheme to deceive CIGNA and CIGNA's customers and thereby create a benefit from both ends of the deceit, which is called "double financing." (Rec. 14, 362 Md. at 367-68). Miller, knowing of this deceit, failed to inform CIGNA of this ongoing scheme, thereby breaching his fiduciary duties to CIGNA and enabling further damage to be inflicted upon CIGNA. (Rec. 14, 362 Md. at 387).

Miller became a licensed insurance agent in the State of Maryland in 1992 (362 Md. at 365).   He worked from his office in Maryland for a Texas-based insurance brokerage, J.L. Hickman & Company, Inc. (the "Agency"), from 1993 to early 1997, when the Agency collapsed (362 Md. at 365).   At some point before August 1995, Miller became the Chief Operating Officer and Executive Vice-President of the Agency (*Id.*).

As the Agency's Chief Operating Officer and Executive Vice President, Miller executed an Agency Agreement (the "Agreement), creating a principal-agent relationship between the Agency and CIGNA effective as of August 1, 1995 (*Id.*).

The Agreement provided:

1.   Our Relationship

a. Authority.   You will act as our agent for those lines of business and those territories in which you and we are both licensed and where we specifically authorize you to do business[.][3]

2.   Your Authority and Duties

b. Collection of Premiums.

All premiums, including return premiums, which you receive are our property.   You will hold such premiums as a trustee for us.   This trust relationship and our ownership of the premiums will not be affected by our books showing a creditor-debtor relationship, the amount of balances at stated periods or your retention of commissions.   Unless we agree otherwise in writing, you must maintain premium monies in a separate bank account and not mingle such monies with your own funds

(*Id.*)

The Agreement obligated the Agency to "keep complete record and accounts of all transactions" pertaining to insurance written under it.   The Agreement also provided for its automatic termination in the event the Agency misappropriated any of CIGNA's "funds or property" and in such event, "all records relating to policies produced will belong to CIGNA."

5

As held by the Maryland Court of Appeals, it is an undisputed (and material) fact that Miller was personally bound to perform the Agency's duties to CIGNA (*Id.* at 366). Miller acknowledged this personal agent-principal relationship with CIGNA on at least two separate occasions (*Id.*). At trial in the Circuit Court, Miller, through counsel recognized that he was an appointed agent for CIGNA from October 1995 through the Spring of 1997 (*Id.*). In a third-party action filed by Miller in the Circuit Court for Baltimore County against Utica Mutual Insurance Company, case number 03-c-97-007281, he once again confirmed that there was an agent-principal relationship between himself and CIGNA and that the provisions of the Agreement applied to him individually (*Id.*).

Miller and the Agency issued various policies of insurance on CIGNA's behalf to customers, for which the customers were obliged to pay premiums (*Id.* at 367). Miller and the Agency routinely required customers to pay premiums in full as a condition of issuing coverage, even though Miller and the Agency represented to CIGNA that the insureds had elected to pay premiums in installments (*Id.*). Meanwhile, Miller and the Agency would not inform CIGNA's insureds that CIGNA offered an installment payment plan (*Id.*). Instead, if the customer could not pay in full, Miller and the Agency arranged for the customer to finance the amount of the insurance premium with a third-party financing company from whom payment in full would also be received by the Agency (and then the customer would make installment payments to the financing company to repay the loan) (*Id.*). This devious practice is known as "double financing" and directly resulted in the CIGNA's funds being held "out of trust" because the trust fund premiums were not remitted to CIGNA (*Id.*). Miller actively participated in a scheme whereby the Agency would deposit the full amount of the premiums received for CIGNA

---

[3] The Agreement provides that "you" refers to the Agency and "we" refers to the relevant CIGNA companies.

policies into an operating account, not a trust account as required under the Agreement and state law, and not pay the full premium to CIGNA (*Id.*).   This practice continued without the knowledge of CIGNA or its customers until 1996 or early 1997, when the Agency had inadequate funds to maintain this on-going "modified insurance Ponzi scheme" (*Id.* at 371). Miller failed to maintain the CIGNA funds "in trust" and withdrew funds from the bank account in violation of the Agreement and his fiduciary duty as an appointed CIGNA agent (*Id.* at 368). Miller and the Agency failed to remit to the CIGNA the full amount paid to the Agency by the customers and the financing companies on account of CIGNA's insurance policies (*Id.*).   Miller and the Agency would remit to CIGNA the amount of the purported installment payment then due on the subject premium, keeping the remainder of the funds for uses other than paying CIGNA (*Id.*).

Miller was aware of, and actively participated in, and was in charge of, several accounts that had this "double financing" scheme in place (*Id.* at 369).   He was responsible for signing checks and sending premium payments to CIGNA for "installments" that CIGNA was misled to believe were due on numerous accounts (*Id.*).     Miller's active participation in the double financing scheme can be best demonstrated by his actions in January and February of 1997 with respect to a customer, Gunther's Leasing Transport, Inc. (Gunther's Leasing) (*Id.*).   Gunther's Leasing's insurance premiums were financed by INAC, a financing company (*Id.*).   When INAC requested the Agency return $400,000.00 in premium funds due to a problem with Gunther's Leasing account, the money, having been diverted for other uses, was not in the trust account and was not available as an unearned premium refund from the insurer because it had not been paid to the insurer either (*Id.*).   To cover this shortfall created by this wrongful diversion of funds, Miller compounded the deceit by intentionally obtaining premium financing on a completely

7

unrelated Gunther account for a new policy Miller caused to be issued by CIGNA, with the

financing obtained expressly for the improper purpose of paying back INAC funds relating to the

Gunther's Leasing account and not to CIGNA for the new policy (*Id.* at 370).

Miller admitted that by at least as early as the latter part of 1996, he was aware the

Agency was "out-of-trust" and of the double financing scheme (*Id.* at 372). He, however, did not

advise the Maryland Insurance Administration and CIGNA until the end of March 1997, when

the Agency went out of business (*Id.*).

### ARGUMENT

I.   **The Bankruptcy Court properly ruled that the findings of fact in the Maryland state
     court proceedings preclude Miller from relitigating factual issues that are material
     to determining dischargeability of Miller's debt to CIGNA.**

The Supreme Court has concluded that the doctrine of collateral estoppel applies in

dischargeability and adversary proceedings in bankruptcy cases. *See Grogan v. Garner*, 498

U.S. 279, 284 (1991). In determining whether preclusive effect should be given to a state court

judgment, the bankruptcy court must apply the applicable state's law of collateral estoppel. *Id.*

Because a Maryland state court judgment is at issue here, Maryland law will be applied to

determine whether Miller may be precluded from relitigating factual issues that underlie a

determination of dischargeability.

A party invoking the doctrine of collateral estoppel must establish each of the following

four elements: 1) the issue decided in the prior adjudication was identical to the one presented in

the action in question; 2) there was a final judgment on the merits; 3) the party against whom

collateral estoppel is asserted was a party or in privity with a party to the prior adjudication; and

4) the party against whom collateral estoppel is asserted was given a fair opportunity to be heard

8

on the issue. *Prarde v. Bell,* 105 Md. App. 636, 647 (1995); *Lees Federal Savings & Loan Ass'n v. Metcalf,* 332 Md. 107,117-118 (1993).

As the Bankruptcy Court properly found in its Memorandum opinion, the issues present here are identical to those heard and determined in the state court case. All elements required to be established by CIGNA in the dischargeability action were actually litigated in the state court proceedings. Miller was afforded a full and fair opportunity to be heard on the issues that were decided against him. The Judgment is now final and nonappealable.

On appeal, Miller asserts that "the facts relied on by the Bankruptcy Court do not support a finding that [Miller's] actions were the proximate cause of the loss sustained by [CIGNA]" [Brief of Appellant at 16]. The crux of Miller's argument appears to be that summary judgment was improvidently granted because there were genuine issues of material fact regarding causation. Miller is incorrect: the Bankruptcy Court properly found as a matter of law that that the proximate cause of the injuries to CIGNA is not a material fact in dispute. CIGNA satisfied its initial burden of showing the absence of a genuine issue of material fact with respect to causation based on the ruling of the Maryland Court of Appeals and by application of the doctrine of collateral estoppel. Thus, the burden shifted to Miller to show, by either referring to evidentiary material <u>in the record</u> or by submitting additional evidentiary documents, that genuine issues of material fact remain to be resolved. He failed to do so.

Miller's argument on appeal goes beyond the record on appeal to argue facts not in evidence, rehashing points made and properly dismissed by Judge Schneider as outside the record. At the hearing on summary judgment, the following exchange takes place after Miller's counsel makes an argument based on "facts" not in evidence before the Bankruptcy Court:

THE COURT: Does the Court of Appeals opinion cite any of that?

9

MR. SCHRAF: It does not, Your Honor. And the fact that it doesn't, doesn't mean that those are not facts in this case, because there was evidence of those very things that I have just told the court and they were undisputed by any witness that [CIGNA] produced in the case. [Tr. at 31]

Then, as now, Miller points to nothing on the record to challenge the Bankruptcy Court's conclusion of law that the case presented no genuine issues of material fact.

## II. Miller's debt should be excepted from discharge under 11 U.S.C. § 523(a)(2)(A) because Miller obtained the use of CIGNA's premiums by false pretenses, false misrepresentation, and actual fraud.

The Bankruptcy Court properly found that Miller's debt to CIGNA was excepted from discharge under Sections 523(a)(2)(A) of the Bankruptcy Code. Miller actively participated in a deliberate scheme of deception that caused damages to CIGNA in excess of $770,000. The Agency, by Miller, caused CIGNA to issue insurance policies with premiums payable to CIGNA in installments. Meanwhile, without CIGNA's knowledge or consent, but as a condition to issuing CIGNA's coverage, the Agency, by Miller, caused the insured parties to pay the Agency the full premium. Often, the insured's source of funds to pay the full premium was through third-party financing arranged by the Agency: the insured would borrow the amount of the premium, pay the full premium to the Agency, and then repay the third-party in installments. Even if every cent of the premiums paid by insureds to the Agency had been deposited into the Agency's trust account (and they were not), this "double financing" scheme was a breach of Miller's fiduciary obligation to CIGNA. As soon as Miller, by the Agency and on CIGNA's behalf, accepted the insured's full premium, CIGNA was obliged to extend coverage to the insured for the full term, even if the Agency never turned over the premium to CIGNA. Moreover, if a premium finance agency cancelled a financed policy because the insured failed to pay, the finance agency would look to CIGNA for a refund of unearned premiums, even if the Agency never paid the premiums to CIGNA.

Section 523(a)(2)(A) excepts from discharge debts "for money, property, services or an extension, renewal, or refinancing of credit to the extent obtained by false pretenses, a false misrepresentation, or actual fraud."

To meet the requirements of misrepresentations under Section 523(a)(2)(A), CIGNA must prove the following elements:

1) The debtor made a representation;

2) The debtor knew the representation was false at the time;

3) The debtor made the representation with the intention and purpose of deceiving the creditor;

4) The creditor relied on such representation;

5) The creditor sustained loss and damage as the proximate result of the representation.

*Spinoso v. Heilman (In re Heilman)*, 241 B.R. 137 (Bankr. D. Md. 1999); *In re Showalter*, 86 B.R. 877, 880 (Bankr. W.D. Va. 1988); *In re Shipe*, 41 B.R. 584, 585-587 (Bankr. D. Md. 1984).

Each of these elements is an undisputed material fact, based on the findings of the Maryland Court of Appeals and the application of the doctrine of collateral estoppel. Miller made representations to CIGNA that he would observe the terms of the Agreement by holding the premium received in trust until timely remittance to the latter. Miller also represented to CIGNA that the insurance policies were issued payable in installments, when in fact the Agency had obtained the full amount of the insurance premiums. Miller knew that the representations were false because he had signatory power on the Agency's bank account and signed checks to pay CIGNA installment premiums on the subject policies despite having already obtained the full premium from the insured. His knowledge of and participation in the double financing scheme is further evidenced by the Gunther Leasing episode, in which Miller obtained premium

financing upon a new CIGNA policy in order to refund unearned premiums to a third-party in connection with a totally unrelated policy, not to pay CIGNA for the policy it issued.

Miller made the representations with the intention of deceiving CIGNA. Miller knew that CIGNA would have terminated the Agreement had he disclosed the double financing scheme. Miller confessed that he became aware of the "out-of-trust" problem as early as the latter part of 1996 (although the Court of Appeals found that he had knowledge of the diversion of funds long before that), but continued the scheme using the diverted funds to pay himself and others, without informing CIGNA of the problem, until after the Agency collapsed in 1997. At the end of the day, the Agency just ran out of Peters to rob to pay Paul.

CIGNA reasonably and justifiably relied on the representations of the Agency and Miller. Miller became an agent of CIGNA via the Agreement and was obligated to act with the utmost loyalty and fidelity towards CIGNA. There was no reason for CIGNA not to rely upon Miller's representations.

CIGNA sustained losses directly related to Miller's activities in the total amount of $784,595.20. It does not matter that all premiums owed to CIGNA were paid prior to the Agency's collapse in the March of 1997. What matters is that Miller actively participated in a scheme to deceive CIGNA (by causing CIGNA to issue policies payable in installments when the full premium had been paid to the Agency but not remitted to CIGNA) and CIGNA's customers (by requiring them to pay premiums in full, when CIGNA was, in effect, extending credit to them by allowing payments in installments, yet CIGNA's customers paid more for their coverage than necessary, either by paying in full from their own resources or by borrowing the funds) and this misconduct proximately caused CIGNA actual injury in the amount of $784,595.20. CIGNA was harmed in another way since it was required by law to continue

12

insurance coverage for the full terms of the policies and incur liabilities, even though it had not received full payment.   The premiums had been paid in full to the Agency and Miller, as CIGNA's agent, and CIGNA, as the principal, was held liable for its agent's misconduct. Moreover, with respect to the Gunther policy, Miller intentionally caused a CIGNA customer to borrow the funds to pay CIGNA's premium with the full intention to use those borrowed funds expressly to pay someone other than CIGNA.

In order to support a finding of nondischargeability based upon the provisions of Section 523(a)(2)(A), the Court must find that Miller used "deceit, artifice, trick or design involving direct and active operation of the mind, used to circumvent and cheat another – something said, done, or omitted with the design of perpetrating what is known to be a cheat or deception." *In re Marino*, 139 B.R. 380, 383 (Bankr. D. Md. 1992).

The ruling of the Court of Appeals clearly supports a finding that Miller's conduct falls within the provisions of Section 523(a)(2)(A) as described by the *Marino* court.   The Court of Appeals found that Miller knowingly and intentionally breached his fiduciary duty to CIGNA by signing company checks to CIGNA in installments when he was in possession of the entire premium amount; by failing to disclose his and the Agency's conflicting actions to CIGNA; by directing the premium financing of another account expressly for the purpose of repaying premium on an unrelated policy; and by assisting the Agency to withhold CIGNA's premiums. Miller's active participation in the double financing scheme, combined with his failure to inform CIGNA of his actions, amounted to trickery and deceit practiced upon CIGNA.

III.   **Miller's debt should be excepted from discharge under 11 U.S.C. § 523(a)(4) because the debt arose as a result of Miller's defalcation while serving as CIGNA's express fiduciary.**

The Bankruptcy Court properly found that Miller's debt to CIGNA was excepted from discharge under Section 523(a)(4) of the Bankruptcy Code, which excepts from discharge any debt for "fraud or defalcation while acting in a fiduciary capacity; embezzlement, or larceny[.]" Notwithstanding Miller's protests to the contrary, CIGNA satisfied its initial burden of showing the absence of a genuine issue of material fact with respect to the issue of Miller's fraud or defalcation while acting in a fiduciary capacity based on the ruling of the Maryland Court of Appeals and by application of the doctrine of collateral estoppel.  As previously discussed, Miller's active participation in the double financing scheme and his failure to disclose the existence of this scheme supports a finding of "fraud," but even if the evidence is insufficient to establish fraud, "defalcation" is a broad term and only requires some portion of misconduct, which these circumstances plainly establish. *See In re Bryant*, 147 B.R. 507, 511 (Bankr. W.D. Mo. 1992).  Miller's conduct in collecting full premiums from CIGNA's insureds, particularly when those premiums were being financed by third-parties through arrangements made by the Agency, all the while representing to CIGNA that the policies were issued on installment terms and while not ensuring that these premiums were held in trust, clearly constitutes a "defalcation."

The Bankruptcy Court properly found that Miller incurred the debt to CIGNA while acting in a "fiduciary capacity" within the meaning of Section 523(a)(4).  Miller's breach of his fiduciary duty imposed by state statutory and regulatory authority over insurance agents, by itself, is insufficient to find a violation of fiduciary duties in the bankruptcy context.  The Maryland Court of Appeals, however, found that Miller's fiduciary duties to CIGNA were not merely imposed by statute or regulations.  Rather, the Maryland Court of Appeals distinctly held

14

that Miller was an express fiduciary under the Agreement, which Miller admitted bound him individually. Moreover, the findings of fact by that court provide a sufficient factual basis for Judge Schneider to conclude, as a matter of law, that Miller's circumstances fall within the scope of Section 523(a)(4) of the Bankruptcy Code.

Only an express trust can create a fiduciary in fact for purposes of nondischargeability of debt under Section 523(a)(4). *Spinoso v. Heilman (In re Heilman),* 241 B.R. 137 (Bankr. D. Md. 1999). "Express" trusts are intentionally formed by the direct and positive act of the settlor, by some writing, deed, or will, or oral declaration. *Id.* at 161. Miller, in his appellate brief, listed all the right questions that should be considered in determining whether he was a fiduciary in fact, but his answers are contrary to the record. The record amply supports the Bankruptcy Court's conclusion.

1.   Was Miller a fiduciary in fact according to State law, either by statute or court decision?

Yes. The opinion of the Maryland Court of Appeals properly held that Miller made a judicial admission that he was an appointed agent and that he was subject to the terms of the Agreement. The Maryland Court of Appeals further found that Miller met all the criteria listed in Maryland Code Section 1-101(c) of the Insurance Article to be an appointed agent. It further identified a particular principal-agent fiduciary relationship between Miller and CIGNA based on the Agreement and the Code of Maryland Regulations (COMAR) 31.03.03.01. "[M]r. Miller's duties, as an appointed agent of [CIGNA], with knowledge of what was occurring, include the duty to make or insure the remittance of payments to [CIGNA] and to keep premium funds in trust." [cite to record] "The evidence is clear that he had knowledge of what was occurring and participated in the scheme. As an agent, he had a fiduciary duty to [CIGNA], which he breached."

15

2.   Was Miller the trustee of an express or technical trust in favor of CIGNA?

Yes, Miller was the trustee of an express trust.  Section 2(b)(3) of the Agreement expressly stipulates that "the Agency will hold premiums as a trustee for CIGNA." Miller signed the Agreement on behalf of the Agency as its Chief Operating officer and Executive Vice President and, in addition, admitted that the provisions of the Agreement applied to him individually.

3.   Did the parties execute an explicit declaration of trust?

Yes, the parties executed an explicit declaration of trust.  The language of the Agreement and Miller's admission to his personal liability under the Agreement constitute an explicit declaration of trust.

4.   Was an ordinary commercial relationship involved?

No ordinary commercial relationship was involved.  The relationship was not a purely debtor-creditor relationship.  Miller was an appointed agent and express fiduciary of CIGNA.

5.   Were there technical duties to be performed by Miller other than the mere payment or segregation of money?

Yes.  The Agreement provided numerous other duties to be performed by the Agency other than the payment and segregation of money.  Miller admitted he was obligated to perform these duties as well because the Agreement applied to him individually.  He had the power to bind CIGNA, to issue insurance policies in CIGNA's name, thereby placing the assets of CIGNA at risk to cover liabilities incurred by the insureds.  As CIGNA's agent, he had the duty to represent CIGNA honestly, which he failed to do, particularly when he misrepresented the terms to the CIGNA's insureds.

16

6.   Was the relationship between the parties under the statute a trust by operation of law?

No.  Unlike a "constructive" or "resulting" trust, the trust did not arise upon the diversion of the funds.  Rather, the obligation to hold the funds in trust was part and parcel of the relationship between the parties.

The Agency entered into an express trust agreement with CIGNA that specifically required the Agency to hold all premium payments it received in trust for the benefit of CIGNA.  Miller signed the Agreement on behalf of the Agency and, as he later admitted, understood that the provisions of the Agreement applied to him individually.  The express trust imposed upon the Agency, as well as Miller, a fiduciary duty as defined by Section 523(a)(4).  Both the Agency and Miller breached such fiduciary duty by their participation in the double financing scheme and failure to disclose conflict of interests.

In addition, "a corporate officer, director or employee, while ordinarily not responsible for the contractual debts of a corporation, may nevertheless be held personally liable for his or her own fraudulent conduct committed on behalf of the corporation which causes injury to another." *Hemelt v. Pontier (In re Pontier),* 165 B.R. 797, 799 (Bankr. D. Md. 1994).

Miller, as the chief operating officer of the Agency, committed deliberate wrongful acts on behalf of the Agency causing actual injury to CIGNA.  Accordingly, Miller should be held personally responsible to CIGNA for the damages.

**IV.   Miller's debt should be excepted from discharge under 11 U.S.C. § 523(a)(6) because Miller's conduct was a willful and malicious injury to CIGNA and its property.**

Section 523(a)(6) excepts from discharge a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."  In *Kawaauhau v. Geiger,* the U.S.

17

Supreme Court held that "the word 'willful' in (a)(6) modifies the word 'injury', indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). Since *Geiger*, a majority of courts have held that the willfulness test under Section 523(a)(6) is met by an intentional act that is substantially certain to result in injury. *In re Dade*, 296 B.R. 388, 392 (Bankr. E.D. Va. 2001); *Johnson v. Davis (In re Davis)*, 262 B.R. 663, 670 (Bankr. E.D. Va. 2001).

"Willful" has been defined as "deliberate or intentional." *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S. Ct. 974, 1140, 140 L. Ed. 2d 90 (1998); *First Nat. Bank of Maryland v. Standley (In re Standley)*, 66 F.3d 664, 667 (4th Cir. 1995). The Court of Appeals found that "Miller knowingly and intentionally breached his fiduciary duty." Miller, by his active participation in the Agency's double financing scheme, intended to divert CIGNA's premium funds for a use other than payment of CIGNA. CIGNA's funds in the amount of $784,595.20 were diverted and dissipated as a direct result of Miller's misconduct.

"Malicious" means "wrongful and without cause or excuse." *St. Paul Fire & Marine Ins. Co. v. Vaughn*, 779 F.2d 1003 (4th Cir. 1985). A debtor may act with malice without "subjective ill will toward the creditor." *In re Standley*, 66 F.3d 664, 667. The element can be satisfied if malice can be implied from the debtor's conducts in the context of the surroundings. *Bennett v. W.T. Grant Co.*, 481 F.2d 664, 664 (4th Cir. 1973). A deliberate and intentional act disregarding other's rights satisfies the implied malice standard. *In re Lee*, 90 B.R. 202, 207 (Bankr. E.D. Va. 1988).

As a licensed insurance agent, Miller violated his obligation under the Agreement and the Code of Maryland Regulation by withholding premium funds that he was obligated to remit to

CIGNA. He allowed CIGNA's funds to be diverted with full awareness that the diversion could cause substantial injury to CIGNA. CIGNA, as a result, sustained an injury in the amount of $784,595.20. Miller's misconduct caused CIGNA malicious injury without justification.

As for the "substantial certainty" test in *Dade* and *Davis*, there is no question that Miller's actions were deliberate given the Court of Appeal's decision. Miller, as an experienced insurance agent, was fully aware of the risks of diverting CIGNA's funds and mingling them with the Agency's own funds. His awareness of such risks was evidenced in the Gunther Leasing incident where the premium refund of $400,000 was not available when INAC demanded a return. Miller, despite the substantial certainty that his conduct might result in injury, continued his participation in the double financing scheme and did cause actual injury to CIGNA.

## V. CIGNA should not be judicially estopped from proving that Miller's conduct was intentional because such an application goes contrary to the rationale of judicial estoppel – to maintain the integrity of judicial system.

Judicial estoppel requires that "one who, without mistake induced by the other party, has taken a particular position deliberately in the course of litigation, must act consistently with it." *Kramer v. Globe Brewing Co.*, 175 Md. 461 (1938). Judicial estoppel looks to the connection between the litigant and the judicial system, with the intention of maintaining the integrity of the judicial system. *Oneida Motor Fright, Inc. v. United Jersey Bank*, 848 F.2d 414, 419 (3rd Cir. 1988). The principle of judicial estoppel is frequently applied to discourage litigants from playing "fast and loose" with the judicial system. *Winmark Limited Partnership v. Miles & Stockbridge*, 345 Md. 614, 622 (1997).

The application of judicial estoppel usually involves some inequitable conduct by the party against whom the principle is used and may consider whether others may be prejudiced by

such misconduct. In the case of *Kramer v. Globe Brewing Co.*, as cited in Miller's appeal brief, Kramer was injured when a beer truck in which he was riding as a helper overturned. *Kramer v. Globe Brewing Co.*, 175 Md. 461, 463 (1938). When Kramer sued the brewery and the driver in a common law tort action, the brewery entered into a special plea stating that Kramer was its employee and the case should be tried under the Worker's Compensation Act. *Id.* After Kramer dismissed the tort action and sought workers' compensation, the brewery wanted to introduce evidence proving that Kramer was not its employee. The court held that "it would be an injustice to Kramer in the present suit, to permit the brewery after having availed itself of an affirmative defense in the prior suit, to appear in a subsequent proceeding involving the same matter of controversy between the same parties, and deny the facts it asserted in the special plea." *Id.* at 471. The brewery, therefore, was judicially estopped from disputing its position in the special plea. *Id.*

Similar language can be found in the case of *Stone v. Stone*, when the court stated that "a party will not be permitted to occupy inconsistent positions or to take a position in regard to a matter which is directly contrary to, or inconsistent with, one previously assumed by him, at least where he had, or was chargeable with, full knowledge of the facts and another will be prejudiced by his action." *Stone v. Stone*, 230 Md. 248, 252 (1962).

Miller, in his appeal brief, claimed that CIGNA should be judicially estopped from proving Miller's intentional misconduct because of CIGNA's position in its action against Miller's insurance carrier that Miller's conduct was negligent in the double financing scheme. Given the rationale of judicial estoppel, CIGNA's alleged inconsistent positions will be analyzed in the context of how they affect the keeping of the courts and the consistency of proceedings.

The case mentioned in Miller's appeal brief is *Insurance Company of North America, et al v. Utica Mutual Insurance Company*, in the United States District Court for the District of Maryland, Case No. MJG 01-CV-2568, which was removed from the Circuit Court for Baltimore County. The disputes between CIGNA and Utica Mutual Insurance Company ("Utica"), Miller's insurance carrier, arose from a "money received exclusion" provision in Miller's errors and omissions insurance policy (the "Insurance Policy"). Exclusion #4 of the Insurance Policy provided that insurance would not be provided for a claim arising out of "any liability for money received by an insured or credited to an insured for fees, premiums, taxes, commissions, loss payments or escrow or brokerage monies." The disagreement between CIGNA and Utica has nothing to do with the issue whether Miller's conduct in the double financing scheme was negligent or intentional. After the Court of Appeals found Miller was liable to CIGNA for an intentional breach of fiduciary duty <u>and</u> for negligence (and before the Bankruptcy Court issued its order granting summary judgment), CIGNA sought to recover its judgment against Miller from the Agency's insurance carrier in accordance with the findings by the Maryland Court of Appeals and the Insurance Policy's coverage provisions. Miller does not argue that CIGNA would be excluded from recovering under the Insurance Policy if Miller's conduct is other than negligent. Consequently, CIGNA's positions are not inconsistent.

The application of judicial estoppel against CIGNA won't serve its rationale of maintaining the integrity of the judicial system. CIGNA has never tried to play fast and loose with the court. CIGNA has consistently asserted the same set of facts to the Circuit Court, the Court of Appeals, and the Bankruptcy Court. Moreover, neither Utica nor Miller will be prejudiced by CIGNA's positions, as the *Kramer* court so justified the application of judicial estoppel.

In addition, negligence and intentional torts are not two positions directly contrary to each other.  They are two theories used to account for Miller's misconduct in the double financing scheme.  The Court of Appeals had no trouble finding Miller liable under theories of both negligence and intentional breach of fiduciary duty.  Negligence was chosen by CIGNA because it carries a lower burden of proof and is much easier to prove than intentional fraud.

The court in *In re Chomat* addressed this issue of using two theories in the analysis of the same facts.  *In re Chomat*, 216 B.R. 681,684 (Bankr. S.D. Fl. 1997).  In *Chomat*, an insurance company used the theory of constructive trust to prove that the reinsurance broker breached its fiduciary duty and was awarded a judgment of $609,433.00. *Id.* at 682.  The insurance company later brought another adversary proceeding against the broker's shareholder in a Chapter 7 cases, seeking the nondischargeability of the debt under Section 523(a)(4). *Id.*  The shareholder claimed that the insurance company should be estopped from proving "express trust" as it failed to do so in the District Court litigation.  The court found the defendant's argument unpersuasive. *Id.* at 684.  The court believed that express trust was more difficult to prove and it was the insurance company's strategic decision to choose which theory to use.  It was not necessary for the insurance company to pursue a more difficult theory when the easier one proved successful in the litigation. *Id.*

It was CIGNA's strategic decision to pursue claims of negligence and breach of fiduciary duty against Miller in the Court of Appeals, both of which require a lower burden of proof.  This strategy turned out to be successful in that litigation.  It was CIGNA's decision again to follow the finding of the Court of Appeals in the action against Miller's insurance carrier.   Intentional fraud, although supported by evidence, is clearly more difficult to prove.  It was unnecessary for CIGNA to take on more difficult claims like fraud when the easier one - negligence – could get

22

CIGNA the same result against Utica under the Insurance Policy. As the court in *Chomat* properly held, CIGNA should not be penalized for making such a strategic decision.

## CONCLUSION

For all the foregoing reasons, the *Order Granting Plaintiffs' Motion for Summary Judgment and Determining Debts to Be Nondischargeable* entered by United States Bankruptcy Court for the District of Maryland on December 31, 2003 should be AFFIRMED.

Respectfully submitted,

CIGNA Insurance Company, *et al.*

By their attorneys:

Stephen F. Fruin, MD Fed. Bar No. 08456
Carol L. Hoshall, MD Fed. Bar No. 05417
Whiteford, Taylor & Preston LLP
Seven Saint Paul Street, Suite 1400
Baltimore, Maryland 21202
(410) 347-8700

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that on this 5th day of March, 2004, a copy of the foregoing Brief

of Appellees CIGNA Insurance Company, *et al*., was mailed first class, postage prepaid to:

> James R. Schraf, Esquire
> 8630 Fenton Street
> Suite 108 - Montgomery Center
> Silver Spring, MD 20910
>
> Richard H. Gins, Esquire
> Gins & Greenfeld
> 5028 Wisconsin Avenue, NW
> Suite 300
> Washington, DC 20016
>
> Charles R. Goldstein, Esquire
> 2 North Charles Street
> Suite 400
> Baltimore, MD 21201
>
> Office of the U.S. Trustee
> 300 West Pratt Street
> Suite 350
> Baltimore, MD 21201

*Carol L. Hoshall*

*1543148v4*

24